CENTER FOR DISABILITY ACCESS
Isabel Masanque, Esq., SBN 292673
Ray Ballister Jr., Esq., SBN 111282
Phyl Grace, Esq., SBN 171771
Dennis Price, Esq., SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Chris Langer**, | Case No. '18CV0163 BEN BLM |
| Plaintiff, | **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act |
| v. | |
| **Alex Mickle**; **Effect Marketing Group, LLC**, a California Limited Liability Company; **Seung Won Choi**; **Hye M. In**; **Cap & Tee Factory SD LLC**, a California Limited Liability Company; and Does 1-10, | |
| Defendants. | |

Plaintiff Chris Langer complains of Defendants Alex Mickle; Effect Marketing Group, LLC, a California Limited Liability Company; Seung Won Choi; Hye M. In; Cap & Tee Factory SD LLC, a California Limited Liability Company; and Does 1-10 ("Defendants") and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. He is a

1

Complaint

paraplegic who cannot walk and who uses a wheelchair for mobility. He has a specially equipped van with a ramp that deploys out of the passenger side of his van and he has a Disabled Person Parking Placard issued to him by the State of California.

2.  Defendants Alex Mickle and Effect Marketing Group, LLC owned the real property located at or about 5875 El Cajon Blvd., San Diego, California, in September 2017.

3.  Defendants Alex Mickle and Effect Marketing Group, LLC own the real property located at or about 5875 El Cajon Blvd., San Diego, California, currently.

4.  Defendants Seung Won Choi and Hye M. In owned the Cap & Tee Factory located at or about 5875 El Cajon Blvd., San Diego, California, in September 2017.

5.  Defendant Cap & Tee Factory SD LLC owns the Cap & Tee Factory located at or about 5875 El Cajon Blvd., San Diego, California, currently.

6.  Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

7.  This Court has subject matter jurisdiction over this action pursuant to

Complaint

28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

8.  Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

9.  Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

10. Plaintiff went to Cap & Tee Factory in September 2017 to have shirts printed.

11. Cap & Tee Factory is a facility open to the public, a place of public accommodation, and a business establishment.

12. Parking spaces are one of the facilities, privileges and advantages offered by Defendants to patrons of Cap & Tee Factory.

13. However, there were no parking spaces marked and reserved for persons with disabilities during Plaintiff's visit.

14. Currently, there is not a single parking space marked and reserved for persons with disabilities.

15. On information and belief, plaintiff alleges that there used to be a parking space marked and reserved for persons with disabilities. However, the parking space has either been paved over or been allowed to fade beyond recognition.

16. Defendants do not maintain the parking lot at all. Because of this lack of maintenance, parking spaces reserved for persons with disabilities no longer exist.

Complaint

17. Plaintiff personally encountered these barriers.

18. This inaccessible condition denied the plaintiff full and equal access and caused him difficulty and frustration.

19. As a result of not being able to park at this location, plaintiff had to go to elsewhere.

20. Although Plaintiff did not personally confront the barrier, paths of travel are another one of the facilities, privileges and advantages offered by Defendants to patrons of Cap & Tee Factory.

21. The path of travel from the parking to the business office entrance required a person to navigate a step for which there was no ramp.

22. Currently, the path of travel from the parking to the business office entrance requires a person to navigate a step for which there is no ramp.

23. Additionally, although there were shelves and merchandise aisles open to customers for shopping, some paths of travel in and throughout these merchandise aisles were not accessible to wheelchair users because the defendants had a practice of placing merchandise display on the route of travel restricting passage to less than 36 inches in width. In fact, the path of travel is narrowed to as to little as 12 inches in some areas.

24. Currently, although there are shelves and merchandise aisles open to customers for shopping, some paths of travel in and throughout these merchandise aisles are not accessible to wheelchair users because the defendants have a practice of placing merchandise display on the route of travel restricting passage to less than 36 inches in width.

25. Transaction counters are also one of the facilities, privileges, and advantages offered by Defendants to patrons of Cap & Tee Factory.

26. The transaction counter at Cap & Tee Factory was 42 inches high.

27. There was no lowered, 36-inch portion of the transaction counter at Cap & Tee Factory for use by persons in wheelchairs.

Complaint

28. Currently, the transaction counter at Cap & Tee Factory is more than 36 inches in height.

29. Currently, there is no lowered, 36-inch portion of the transaction counter at Cap & Tee Factory for use by persons in wheelchairs.

30. Restrooms are another one of the facilities, privileges, and advantages offered by Defendants to patrons of Cap & Tee Factory.

31. However, the restroom mirror was mounted on the wall so that its bottom edge was more than 40 inches above the finish floor.

32. The disposable toilet seat cover dispenser was mounted so that its highest operable part was greater than 54 inches above the finish floor and inaccessible to wheelchair users.

33. Currently, the restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the finish floor.

34. Currently, the disposable toilet seat cover dispenser is mounted so that its highest operable part is greater than 54 inches above the finish floor and inaccessible to wheelchair users.

35. Plaintiff would like to return and patronize Cap & Tee Factory but will be deterred from visiting until the defendants cure the violations.

36. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

37. For example, there are numerous paint/stripe companies that will stripe a parking stall and access aisle and install proper signage on short notice and for a modest price, sometimes as low as $300, in full compliance with federal and state access standards.

Complaint

38. Another common barrier removal project is modifying transaction counters to make a portion of the counter accessible. This is a simple construction task, well within the capabilities of any general contractor. The task can be completed easily and for a modest price.

39. Plaintiff is and has been deterred from returning and patronizing Cap & Tee Factory because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to the business to assess ongoing compliance with the ADA and will return to patronize Cap & Tee Factory as a customer once the barriers are removed.

40. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to her disability removed regardless of whether he personally encountered them).

41. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of plaintiff and against all

Complaint

defendants (42 U.S.C. section 12101, et seq.)

42. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

43. Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

  a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).

  b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."

  c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

44. Any business that provides parking spaces must provide a sufficient

Complaint

number of handicap parking spaces. 1991 Standards § 4.1.2(5). 2010 Standards § 208. The required minimum number of handicap parking spaces is dependent on the total number of parking spaces available. *Id.* According to the 1991 Standards, if a parking lot has 1-25 spaces, it must have at least 1 accessible parking space. 1991 Standards § 4.1.2(5)(a). And 1 in every 8 of those accessible parking spaces, but not less than 1, must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, a parking lot with 1-25 spaces must have at least 1 accessible space and 1 of them must be van accessible. 2010 Standards § 208.2 & § 208.2.4.

45. Here, the failure to provide accessible parking spaces is a violation of the ADA.

46. There must be an accessible path of travel that connects all buildings, elements and spaces on the same site. 1991 Standards § 4.3.2. To be considered an accessible route, there cannot be a stair or step. 1991 Standards § 4.3.8. Any such change in level measuring greater than ½ inch must have a ramp or lift. *Id.* 2010 Standards § 303.4.

47. Here, the unramped step is a violation of the ADA.

48. In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter which is at least 36 inches in length with a maximum height of 36 inches above the floor. 1991 Standards § 7.2(1). Under the 2010 Standards, where the approach to the sales or service counter is a parallel approach, such as in this case, there must be a portion of the sales counter that is no higher than 36 inches above the floor and 36 inches in width and must extend the same depth as the rest of the sales or service counter top. 2010 Standards § 904.4 & 904.4.1.

49. Here, no such accessible transaction counter has been provided, in

Complaint

1    violation of the ADA.

2        50. Mirrors shall be mounted with the bottom edge of the reflecting surface
3    no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6;
4    2010 Standards § 603.3.

5        51. Here, the mirror was mounted higher than the maximum permitted and
6    is a violation of the ADA.

7        52. If controls, dispensers, receptacles or other equipment is provided in a
8    restroom, they must be on an accessible route and be mounted so that their
9    highest operable parts are no greater than 54 inches above the floor. 1991
10   Standards § 4.22.7; 4.27.

11       53. Here, the failure to ensure that the wall mounted accessories met the
12   height requirement is a violation of the ADA.

13       54. A public accommodation must maintain in operable working condition
14   those features of its facilities and equipment that are required to be readily
15   accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

16       55. Here, the failure to ensure that the accessible facilities were available
17   and ready to be used by the plaintiff is a violation of the law.

18       56. Given its location and options, plaintiff will continue to desire to
19   patronize Cap & Tee Factory but he has been and will continue to be
20   discriminated against due to the lack of accessible facilities and, therefore,
21   seeks injunctive relief to remove the barriers.

22

23   **II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL**
24   **RIGHTS ACT** (On behalf of plaintiff and against all defendants) (Cal Civ §
25   51-53)

26       57. Plaintiff repleads and incorporates by reference, as if fully set forth
27   again herein, the allegations contained in all prior paragraphs of this
28   complaint.

Complaint

58. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Civ. Code § 51(f), 52(a).)

59. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, i.e., a civil penalty. (Civ. Code § 55.56(a)-(c).)

**PRAYER**:

Wherefore, Plaintiff prays that this court award damages and provide relief as follows:

1. For injunctive relief, compelling defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act which damages provide for actual damages and a statutory minimum of $4,000 per incident.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; Cal. Civ. Code § 52.

Dated: January 15 2018                CENTER FOR DISABILITY ACCESS

By:  _Isabel P. M_
_____
Isabel Masanque, Esq.
Attorney for Plaintiff

10

Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

11

Complaint